1   Randolf W. Katz (SBN 86214)
    Andrew A. Wood (SBN 279403)
2   BAKER & HOSTETLER LLP
    600 Anton Boulevard, Suite 900
3   Costa Mesa, CA 92626-7221
    Telephone: 714.966.8805
4   Facsimile: 714.996.3514
    Email: rwkatz@bakerlaw.com
5            awood@bakerlaw.com

6   Peter R. Ginsburg (*pro hac vice*)
    PETER R. GINSBERG LAW, LLC
7   80 Pine Street, 33rd Floor
    New York, New York 10005
8   Telephone: (646) 374-0030
    Fax: (646) 355-0202
9   Email: pginsberg@prglaw.com

10  Attorneys for Plaintiff ECO BUILDING PRODUCTS, INC.,
    WOOD PROTECTION TECHNOLOGIES, INC. and MAK, LLC
11

12  **UNITED STATES BANKRUPTCY COURT**
    **SOUTHERN DISTRICT OF CALIFORNIA**
13

14  In re: MARK VUOZZO and
    OKSANA G. VUOZZO,                      Case No. 1:18-00784-CL7
15                                         Chapter 7
16           Debtors
17  _____

18  ECO BUILDING PRODUCTS, INC.,
    WOOD PROTECTION
19  TECHNOLOGIES, INC., and               **COMPLAINT**
    MAK, LLC
20

21           Plaintiff,

22  v.

23  MARK VUOZZO

24           Defendant.

25

26

27

28

COMPLAINT

Plaintiffs Eco Building Products, Inc. ("Eco"), Wood Protection Technologies, Inc. ("WPT") and MAK, LLC ("MAK") (collectively, "Plaintiffs"), through counsel, allege the following complaint against defendant Mark Vuozzo ("Vuozzo"):

## INTRODUCTION

1.     Eco is a publicly-traded corporation organized and existing under the laws of the State of Colorado with a principal place of business in San Diego, California.

2.     WPT is a subsidiary of Eco.

3.     MAK is a Florida limited liability company, with a principal place of business in Florida.  Its sole member is Gary Rogers ("Rogers").  MAK is an investor in and creditor to Eco and WPT.

4.     Eco and WPT (collectively, "the Companies") are engaged in the business of developing, manufacturing, and selling environmentally-friendly chemical coatings for the treatment and protection of wood and lumber, utilizing proprietary, confidential patented and patent-pending technology.  The Companies' proprietary coatings protect wood and lumber against fire, mold/mycotoxins, fungal-decay, wood-ingesting insects, and termites.

5.     WPT holds and has the exclusive right to the Companies' intellectual property.

6.     Vuozzo was an employee of both Eco and WPT from 2007 until June 2017. Between 2010 and 2017, Vuozzo served as Chief Technical Officer of Eco and WPT.  Vuozzo also was a member of Eco's Board of Directors from 2010 until spring of 2017 and WPT's Board of Directors from winter 2016 until the fall of 2017.

7.     On behalf of the Companies, Vuozzo solicited loans and investment capital from MAK.

8.     As early as 2013, Vuozzo exchanged emails with Rogers to solicit loans to fund Eco's business ventures.  Beginning in at least September 2013

and continuing through 2017, Vuozzo and Rogers regularly communicated by email and telephone, typically once per week, with Vuozzo serving as Rogers's primary point of contact with Eco and WPT.

9.     In September 2013, Vuozzo received a personal loan from Rogers (the "Rogers Loan").

10.     In May 2014, Vuozzo and Eco's then-Chief Executive Officer, Steve Conboy ("Conboy"), flew to Miami, Florida, where they met with Rogers and other potential lenders for the purpose of soliciting funds for Eco.  As a result of this meeting as well as the ongoing communications between Vuozzo and Rogers, MAK made 38 short-term convertible loans to Eco in 2015 and 2016, and 16 short-term non-convertible loans to WPT in 2016 and 2017 (collectively the "MAK Loans").

*False Contract*

11.     On May 6, 2015, Vuozzo sent a written resignation notice (the "Notice") to Conboy and to Tom Comery ("Comery"), who at the time was a member of Eco's Board of Directors and became its CEO in June 2015.  In the Notice, Vuozzo claimed that he was owed more than $600,000 based on a supposed employment agreement ("False Contract") that Vuozzo executed on behalf of Eco in favor of himself.

12.     Eco is informed and believes, and thereon alleges, that Vuozzo either conspired with Conboy to cause Eco to enter into the contract or forged Conboy's signature on the False Contract, in either case to Vuozzo's benefit and Eco's detriment.  The False Contract called for Vuozzo to receive a salary of $250,000 per year.

13.     Eco's Board of Directors did not ratify the False Contract as Eco's Bylaws required.

14.     Vuozzo orchestrated and executed the False Contract when Eco was insolvent.  Financial statements filed with the Securities and Exchange

Commission specifically noted that as of the time of the false contract Eco had recorded an accumulated deficit of tens of millions of dollars in recurring operational losses as of that time, and that the company's continuation as a going concern was dependent upon obtaining additional working capital.

15.     Under Eco's Bylaws and general corporate law relating to self-dealing agreements between corporations and their officers and directors, the False Contract was invalid.

16.     Vuozzo demanded that Eco pay within 30 days all unpaid salary Vuozzo claimed he was owed under the False Contract.  Eco denied that it owed Vuozzo the salary he claimed and never paid Vuozzo what he demanded.  At the time of his resignation, Vuozzo had knowledge both of any alleged unpaid salary that he contended he was owed and that Eco refused to pay Vuozzo the unpaid salary he claimed.

17.     Following Vuozzo's resignation, Comery spoke with Vuozzo. Comery and Vuozzo agreed Vuozzo would re-join the Companies at the same salary as he was receiving before his resignation.  Comery, on behalf of the Companies, and Vuozzo agreed that Vuozzo would abandon his claim of back compensation and that his claim would never be part of his future compensation structure with the Companies.  Vuozzo accepted the conditions for his return to the Companies.

*Vuozzo Breaches His Fiduciary Duties*
*and Steals the Companies' Trade Secrets*

18.     After re-joining the Companies, Vuozzo remained disgruntled and engaged in a variety of misconduct in violation of his fiduciary duties, including a duty of loyalty, duty of care, and duty of good faith.

19.     Vuozzo took cash belonging to Eco and used these corporate funds for his own personal use and benefit, and charged personal expenses to Eco's account ("Funds Theft"), including purchasing new cellular telephones for

4

his family and charging the telephones' service plans and the cellular data plans to Eco's account. Vuozzo had no right or authorization to take and use Eco's company funds for his own use and benefit. Additionally, Conboy kept a safe in his office to hold Eco's cash receipts. Upon information and belief, Vuozzo periodically took cash from this safe to use for his personal benefit.

20. Additionally, Vuozzo stole and misappropriated the Companies' intellectual property and trade secrets ("IP Theft"). The Companies hired Vuozzo as Chief Technical Officer specifically, among other tasks, to invent and develop the environmentally-friendly chemical coatings that the Companies manufacture. Each such chemical formula and process for a particular product generally is referred to as a "Bill of Materials."

21. Each Bill of Materials allows the Companies to manufacture and sell a unique wood protection product that Eco's competitors cannot duplicate. These Bills of Materials therefore give Eco significant competitive advantages and are extremely valuable to Eco's business and constitute Eco's trade secrets.

22. WPT sought two patents in its proprietary formulas (the "Two Patents") and holds other intellectual property (the "IP").

23. Ownership of and rights to these trade secrets belong to the Companies. Vuozzo, whose involvement with developing the trade secrets was strictly limited to his employment by the Companies, had and has no valid claim to the trade secrets.

24. In addition, as an officer of the Companies, Vuozzo had a fiduciary duty to preserve and protect the Companies' rights in the Bills of Materials and to maintain the confidentiality of these trade secrets. Vuozzo could not misappropriate the Bills of Materials for his own use or disclose these trade secrets to any third party.

25. Vuozzo on several occasions threatened to Comery that Vuozzo would make claim to the intellectual property rights in and relating to the

1   Bills of Materials.  Vuozzo even told an Eco employee that he hoped to
2   bankrupt the company and take the intellectual property so that he could use it
3   for his personal gain or to enter into commercial ventures with competing
4   businesses.

5       26.    Vuozzo purloined from the Companies' offices files containing its
6   intellectual property and other confidential and proprietary information and
7   refused to provide to the Companies' executives the passwords necessary to
8   access the Companies' proprietary information.

9       27.    On or about December 14, 2016, Vuozzo confirmed WPT's right to
10  the Two Patents and IP by executing two assignments to WPT for the "entire
11  rights, title and interest" of the Two Patents and IP (the "Patent Assignments").

12      28.    Approximately a week later, on or about December 21, 2016,
13  Vuozzo filed a false and unsupported UCC Financing Statement, Document No.
14  2016035416-7, in Nevada (the "UCC Filing"), purporting to assert a security
15  interest in the Two Patents and the IP.

16      29.    On or about January 18, 2017, following an angry outburst,
17  Vuozzo removed from Eco's offices the files belonging to the Companies
18  containing intellectual property in and relating to the Bills of Materials as well
19  as other files and information belonging to the Companies, in violation of the
20  Companies' explicit rules and regulations.  Vuozzo returned at least some of the
21  files, but the Companies do not know whether Vuozzo returned everything he
22  took or whether Vuozzo made and kept copies of the materials he took.

23      30.    In a prior action, another Eco employee, Anthony Vinole ("Vinole"), stated
24  that on January 18, 2017 Vuozzo left Eco with the "Digital SG Meter, Mixing Table with
25  Heater, Scale, Acid Tester, and a box with confidential files from over the years with test
26  and chemical data."

27

28

COMPLAINT

*Vuozzo Harms Eco's Products*

**31.**    Eco hired Vuozzo to create the Bills of Materials which govern the ingredients, chemical formulas and applications for Eco's wood and lumber protection products. As part of his duties, Vuozzo agreed and was obligated to follow proper scientific procedures for testing the chemical formulas and processes used to create the Bills of Materials.

**32.**    Comery told Vuozzo on several occasions that if Vuozzo made any change to the chemical formulas and processes, he must inform Comery of his plans, document all changes, follow proper scientific procedures, and conduct appropriate tests of the modifications of the chemical formulas and processes.

**33.**    In 2016, Eco began discussing the sale of millions of dollars' worth of its fire-protection intellectual property to a third-party buyer.

**34.**    Prior to consummating the sale, the Vuozzo-modified product was tested and did not perform adequately as a result of Vuozzo's unilateral actions.

**35.**    As a result, the sales agreement was not consummated and Eco lost significant revenue.  If Vuozzo had not changed the chemical formula and processes, or had done what he was required to do if modifications were made, Eco would have known that the product as modified by Vuozzo was not yet ready for sale and it would have required Vuozzo to modify the chemical formula and processes again.

**36.**    On or about November 15, 2016, the Companies' products began to fail routine fire testing which the products previously had passed.  The Companies could not sell their products or enter into any business arrangements if the products could not pass fire tests.

**37.**    The Companies' executives later learned that Vuozzo secretly, unilaterally, and without authorization had made changes to the unique chemical

1  formulas and processes used for the products, which affected key product

2  characteristics and caused them to fail the fire tests.

3      **38.**    Vuozzo changed the process for drying the products in such a way

4  that the products did not seep into wood as intended.  Vuozzo added a substance

5  to the chemical formulas of the products which changed their pH level.  Vuozzo

6  changed the process for mixing the products by super-mixing the products at a

7  higher speed than previously used, thereby altering unique characteristics of the

8  products.  Vuozzo also changed the fire inhibitor from one of the original

9  products to a different product which had not been tested.

10      **39.**    Vuozzo later admitted that he avoided testing the above changes –

11  as he was required to do – because such testing was costly and any additional

12  funds expended to test each change would mean "money out of [his pocket]."

13                               *Vuozzo Quits Eco Permanently and*

14                 *Continues to Misappropriate Eco's Trade Secrets*

15      **40.**    Vuozzo left Eco permanently at the end of June 2017.  He subsequently

16  began working for Homewood Solutions as a commissioned sales person.

17      **41.**    The parties executed a Non-Disclosure Agreement (hereinafter "<u>NDA</u>") and

18  an Affidavit on July 12, 2017.  Both parties were represented by counsel when the

19  agreement was signed.

20      **42.**    On September 16, 2017, Vuozzo sent an email containing confidential

21  information belonging to the Companies in the form of pictures and electronic files to two

22  members of a company called Fire Retardant Technologies (hereinafter "<u>FRT</u>").

23      **43.**    Vuozzo attempted to interfere with Eco's relationship with one of its

24  primary clients, Alta, falsely suggesting to Alta that a trademark for which Eco has applied

25  was instead owned by Vuozzo's current employer, Homewood Solutions.

26      **44.**    During the term of Vuozzo's employment, Eco spent at least $250,000 to

27  create various YouTube videos for marketing purposes.  Vuozzo retains electronic access

28

COMPLAINT

1 to the accounts related to this information after he left Eco and has not provided the

2 necessary account access information to Eco.

3 *Prior Actions*

4 45.    Vuozzo, the Companies, and MAK have been or are currently engaged in

5 litigation in multiple other states.

6 The Arbitration

7 46.    In April or May 2017, Vuozzo filed a demand for arbitration with

8 AAA, styled as *Vuozzo* v. *Eco Building Products, Inc.,* Case No. Case Number:

9 01-17-0003-1661 (the "Arbitration"), claiming that he is owed $700,000 in

10 unpaid salary under the False Contract.

11 The Colorado Action

12 47.    On June 26, 2017, in an action styled *Eco Building Products, Inc. v.*

13 *Vuozzo*, Case No. 2017CV32306 (the "Colorado Action"), Eco sued Vuozzo in

14 Colorado state court seeking to enjoin the Arbitration, a declaration that all

15 intellectual property Eco hired Vuozzo to create and that Vuozzo did create for

16 Eco is owned by Eco, and an injunction requiring Vuozzo to account for and

17 return any intellectual property he has taken from Eco.  Eco also sought

18 damages for corporate funds Vuozzo wrongfully converted.

19 48.    In the Colorado Action, Vuozzo admitted to owing a fiduciary duty to the

20 Companies.  Vuozzo also stated that he was responsible for overseeing the development of

21 the Companies' intellectual property, assuring compliance with Securities & Exchange

22 Commission requirements, serving as an ombudsman for legal issues, and overseeing the

23 Companies' audits.

24 49.    By Order entered on January 25, 2018, the Colorado court granted Eco's

25 motion for preliminary injunction on Eco's claims that Vuozzo improperly (1)

26 disclosed Eco's confidential trade secrets, proprietary technology, intellectual

27 property, and names of clients to competitors; and (2) attempted to interfere with

28

9

Eco's business by failing to relinquish and surrender electronic access to Eco's proprietary information.  The court made the following findings:

**a.** Vuozzo's testimony was clear that he had misappropriated trade secrets and disclosed other proprietary and confidential information owned by Eco to a competitor organization, FRT, from whom he hoped to obtain employment.  Part of the information that Vuozzo disclosed to FRT [was] proprietary formulas and applications of those formulas that were developed and known only by Eco.  The Court found credible Mr. Comery's testimony stating that these proprietary formulas and applications of those formulas are nearly the entirety of Eco's business value.

**b.** Vuozzo further acknowledged that when he left Eco he did not relinquish his access to Eco's electronically stored information, nor did he provide access to Eco.  Vuozzo has had since June 2017 to relinquish and provide access to Eco and has not done so.

**c.** The Court similarly found Mr. Comery's testimony credible regarding the significant cost and proprietary nature of the electronically stored data for which Vuozzo has not relinquished or provided access to Eco. The loss of this data would be financially devastating to Eco, particularly as [it is] unable to reproduce or replace much of the stored information. As Vuozzo has previously disclosed trade secrets and proprietary information, and he continues to be the only person in possession of certain electronic access information, Eco has also sufficiently demonstrated that there is danger of real, immediate, and irreparable harm to Eco of possible further disclosure or misappropriation with no plain, speedy, or adequate remedy at law.

COMPLAINT

Nevada Action

**50.** On or about October 19, 2017, Eco sued Vuozzo in Nevada state court, in an action styled as *Eco Building Products, Inc. v. Vuozzo*, Case No. A-17-763393-B (the "Nevada Action"). In the Nevada Action, Eco sought an order directing Vuozzo to withdraw, cancel, or otherwise render ineffectual the UCC Filing, and to enjoin Vuozzo from filing further improper liens against WPT's Two Patents and IP.

**51.** In a November 14, 2017 order granting Eco's motion for preliminary injunction, the Court entered, in part, the following findings:

    **a.** Eco retained Vuozzo specifically to invent and develop unique chemical formulas and processes for Eco and, when WPT was formed, for WPT.

    **b.** These formulas and processes are proprietary trade secrets owned by the Companies and over which the Companies have exclusive intellectual property rights.

    **c.** These trade secrets are not known to the Companies' competitors and give the Companies a significant competitive advantage.

    **d.** Vuozzo, whose involvement with developing these formulas and processes was strictly limited to his retention by Eco and WPT, has no valid claim to the intellectual property rights.

    **e.** Moreover, as an Officer of Eco and WPT and Director of WPT, Vuozzo's fiduciary duties require that he not claim or challenge the Companies' exclusive right to the intellectual property and not claim, misappropriate or misuse the Companies' confidential information, including disclosing the intellectual property to any third-party. [. . .]

    **f.** On July 12, 2017, Vuozzo again confirmed the Companies' exclusive right to the two filed patents and all the

11

COMPLAINT

intellectual property represented by those patents and [a] third patent which is in the process of being filed by executing a Non-Disclosure Agreement and Affidavit.  Those documents both confirm that the Companies are the sole owners of all the intellectual property at issue, including all intellectual property that Vuozzo developed or helped to develop when he was engaged to perform work on behalf of the Companies.

**g.**    Defendant has not challenged the authenticity or veracity of the Non-Disclosure Agreement [. . .] nor has Defendant claimed he did not sign those documents.  The Court finds for purposes of this Motion that the Non-Disclosure Agreement is valid and was signed by Defendant.

**52.**    The Nevada court enjoined Vuozzo from filing any UCC Financing Statements that assert the Defendant owns or holds a security interest in any right, title, or interest in any or all of the IP or the Two Patents.

**53.**    The Nevada Court also entered a mandatory injunction ordering Vuozzo immediately and within twenty-four hours of execution of the court's order withdraw, cancel, or otherwise render ineffectual the UCC Financing Statement, Document No. 2016-035416-7, pursuant to NRS 225.084.  The Nevada Court further ordered Vuozzo to immediately and within twenty-four hours of execution of the order withdraw, cancel, or otherwise render ineffectual the UCC Financing Statement.

<u>The Southern District of Florida Action</u>

**54.**    On or about August 31, 2017, MAK sued Vuozzo in the United States District Court for the Southern District of Florida, in an action styled as *MAK, LLC v. Vuozzo*, Case No. Case No. 17-23310-CIV (the "<u>Florida Action</u>").  In the Florida Action, MAK's brought a six-count Complaint against Vuozzo for (1) breach of

12

1    fiduciary duties; (2) fraud; (3) negligent misrepresentations; (4) tortious

2    interference with MAK's contractual lending relationships with Eco and WPT;

3    (5) negligence; and (6) requesting an injunction requiring Vuozzo to remove the

4    UCC Filing; enjoining Vuozzo from disparaging the Companies; enjoining

5    Vuozzo from using or disclosing the Companies' intellectual property and other

6    confidential information; and ordering Vuozzo to return any property belonging

7    to the Companies that remains in his possession, including any copies.  In

8    addition to injunctive relief, MAK sought damages, pre-judgment and post-

9    judgment interest, and attorney's fees and costs.

10        **55.**    In a November 7, 2017 order granting MAK's motion for a preliminary

11    injunction, the Court entered in part the following findings and orders:

12            **a.**    There does not appear to be any reasonable dispute as to

13        Plaintiff's requests the Court enjoin Defendant from using or

14        disclosing Eco and WPT's confidential information; enjoin Defendant

15        from disparaging Eco and WPT; and order Defendant to return any

16        property belonging to Eco or WPT in his possession. (See Mot. 10.)

17        Defendant has already promised not to disparage Eco and WPT or use

18        or disclose their confidential information (See Vuozzo Aff. 18-10;

19        Resp. 4-5).  Accordingly, a Court order forbidding such behavior will

20        cause Defendant no prejudice.

21            **b.**    Similarly, while Vuozzo swears he has already deleted,

22        destroyed, or returned to Eco's CEO all electronic and hard copies of

23        confidential information belonging to Eco and its subsidiaries

24        (including WPT) that were once in Vuozzo's possession (see Vuozzo

25        Aff. 3-6; Resp. 3), an order requiring Vuozzo to return any such

26        information will not cause him any harm as he had already intended to

27        rid himself of the property anyway. In contrast, [MAK], as an investor

28        and creditor in Eco and WPT, would be irreparably harmed if Vuozzo

COMPLAINT

negatively affected the value of these "not yet well-established" companies by disparaging Eco or WPT to a key client or stealing, using for himself, or disclosing to a third-party Eco or WPT's valuable intellectual property.  [MAK] has met its burden for preliminary injunctive relief granting these requests.

      **c.**    Defendant is enjoined from using or disclosing to third parties Eco and WPT's confidential information.

      **d.**    Defendant is enjoined from disparaging Eco and WPT.

      **e.**    Defendant is ordered to return to Eco and WPT any property belonging to Eco or WPT in his possession.

*Bankruptcy*

**56.**    On February 13, 2018, Vuozzo and his wife voluntarily filed bankruptcy under chapter 7.

**57.**    Notwithstanding the orders of the courts in Nevada, Colorado, and Florida, Vuozzo's bankruptcy schedules assert interests in the Two Patents and the IP, and assert that Vuozzo's interest is $1,000,000.

**58.**    Vuozzo also attests under oath in his bankruptcy schedules that he is owed over $800,000 in unpaid wages.

## FIRST CLAIM

## (11.S.C. § 523(a)(2)(A) against VUOZZO)

**59.**    Plaintiffs reallege and incorporate the allegations previously set forth as if fully set forth herein.

**60.**    Vuozzo fraudulently misrepresented, fraudulently omitted, and deceived the Companies regarding the chemical formulas for the Bills of Materials and the changes he made to those formulas (the "<u>Formula Fraud</u>"). Additionally, Vuozzo fraudulently misrepresented, fraudulently omitted, and deceived the Companies regarding the False Contract by which he claimed the Companies owed him over $600,000 (the "<u>Contract Fraud</u>").  Additionally,

14

Vuozzo fraudulently misrepresented, fraudulently omitted, and deceived the Companies as to the Two Patents and the IP (the "IP Fraud").  Additionally, Vuozzo fraudulently misrepresented, fraudulently omitted, and deceived the Companies as to his misappropriation of the Companies' funds for his personal use and benefit without the Companies' authorization (the "Misappropriation Fraud").

61.    At the time he committed the Formula Fraud, the Contract Fraud, the IP Fraud, and the Misappropriation Fraud, Vuozzo knew of the falsity and deceptiveness of his conduct and statements.

62.    Vuozzo intended to deceive the Companies through the Formula Fraud, the Contract Fraud, the IP Fraud, and the Misappropriation Fraud.

63.    The Companies justifiably relied on Vuozzo's Formula Fraud, Contract Fraud, IP Fraud, and Misappropriation Fraud.

64.    The Companies have been damaged as a proximate result of their reliance on Vuozzo's Formula Fraud, Contract Fraud, IP Fraud, and Misappropriation Fraud.

65.    The Companies are entitled to an award of damages in an amount to be determined at trial resulting from Vuozzo's Formula Fraud, Contract Fraud, IP Fraud, and Misappropriation Fraud.  The Companies are entitled to a declaration by the Court that such damages are not dischargeable in Vuozzo's bankruptcy.  11 U.S.C. § 523(a)(2)(A).

## SECOND CLAIM

### (11 U.S.C. § 523(a)(4) against VUOZZO)

66.    Plaintiff realleges and incorporates the allegations previously set forth as if fully set forth herein.

67.    At all relevant times, Vuozzo was an officer and fiduciary of the Companies.

15

68.    By committing the Formula Fraud, the Contract Fraud, the IP Fraud, and the Misappropriation Fraud, Vuozzo committed fraud and defalcation while acting in a fiduciary capacity to the Companies.

69.    As a result of Vuozzo's actions, the Companies have suffered damages.

70.    The Companies are entitled to a judgment against Vuozzo for committing fraud and defalcation while acting in a fiduciary capacity, and the Companies should be awarded damages in an amount to be proven at trial for all loss caused by Vuozzo's misuse of corporate funds.  The Companies are entitled to a declaration from this Court that such damages are not dischargeable in Vuozzo's bankruptcy.  11 U.S.C. § 523(a)(4).

## THIRD CLAIM

### (11 U.S.C. § 523(a)(6) against VUOZZO)

71.    Plaintiffs reallege and incorporates the allegations previously set forth as if fully set forth herein.

72.    Vuozzo deliberately, willfully, intentionally, wrongfully, maliciously, and without justification or authority, committed the Misappropriation Fraud by misappropriating and using corporate funds for personal use and personal benefits that are not shared by the Companies. Through the Misappropriation Fraud, Vuozzo maliciously intended to harm the Companies for his own benefit.

73.    Further, Vuozzo deliberately, willfully, intentionally, wrongfully, maliciously, and without justification or authority committed the Formula Fraud.  Vuozzo willfully, intentionally, wrongfully, maliciously, and without justification or authority changed the Companies' chemical formulas, which harmed the Companies' products and, among other things, caused them to fail fire tests and lose valuable business opportunities.  Vuozzo deliberately concealed the changes from the Companies at the time the changes were made,

16

1    and the Companies were damaged in that they thereby possessed damaged

2    products that they could not sell.  Further, at least one third party refused to buy

3    products from the Companies in light of Vuozzo's willful, intentional, wrongful,

4    malicious, unjustified, and unauthorized changes.  Through the Formula Fraud,

5    Vuozzo maliciously intended to harm the Companies for his own benefit.

6       74.    Further, Vuozzo deliberately, willfully, intentionally,

7    wrongfully, maliciously, and without justification or authority committed the

8    Contract Fraud by manufacturing, drafting, executing, making demands under,

9    and pursuing claims under the False Contract while knowing of its falsity.

10   Through the Contract Fraud, Vuozzo maliciously intended to harm the

11   Companies for his own benefit.

12      75.    Further, Vuozzo deliberately, willfully, intentionally,

13   wrongfully, maliciously, and without justification or authority committed the

14   IP Fraud.  Vuozzo caused the UCC Filing to be filed only a week after expressly

15   disclaiming any interest in the Two Patents or IP in December 2016 and

16   continues to assert interests in the Two Patents and IP despite expressly

17   disclaiming such interests.  Through the IP Fraud, Vuozzo maliciously intended

18   to harm the Companies for his own benefit.

19      76.    As a direct and proximate result of Vuozzo's deliberate, willful,

20   intentional, wrongful, malicious, unjustified, and unauthorized Formula Fraud,

21   Contract Fraud, IP Fraud, and Misappropriation Fraud, the Companies suffered

22   and continue to suffer actual damages in an amount to be proven at trial.

23      77.    The Companies are entitled to damages, in an amount to be proven

24   at trial, against Vuozzo for willful and malicious injury by Vuozzo to the

25   Companies and to the Companies' property.  The Companies are entitled to a

26   declaration that such amount is not dischargeable in Vuozzo's ongoing bankruptcy.

27   11 U.S.C. § 523(a)(6).

28

COMPLAINT

## FOURTH CLAIM

## (11 U.S.C. § 523(a)(2)(A) against VUOZZO)

**78.**    Plaintiffs reallege and incorporate the allegations previously set forth as if fully set forth herein.

**79.**    Vuozzo fraudulently misrepresented, fraudulently omitted, and deceived MAK into providing the MAK Loans by falsely depicting his integrity, that he would always act in the Companies' best interest, and by falsely representing that he would faithfully perform his duties as a fiduciary on behalf of the Companies (the "Loan Fraud").  MAK would not have made the MAK Loans but for Vuozzo's intentional, fraudulent misrepresentations, fraudulent omissions, and deception in connection therewith.

**80.**    At the time he committed the Loan Fraud, Vuozzo knew of the falsity and deceptiveness of his conduct and statements.

**81.**    Vuozzo intended to deceive MAK through his fraudulent, intentional misrepresentations.

**82.**    MAK justifiably relied on Vuozzo's fraudulent, intentional misrepresentations.

**83.**    MAK has been damaged as a proximate result of its reliance on Vuozzo's Loan Fraud.

**84.**    MAK is entitled to an award of damages in an amount to be determined at trial resulting from Vuozzo's Loan Fraud.  MAK is entitled to a declaration by the Court that such damages are not dischargeable in Vuozzo's bankruptcy.  11 U.S.C. § 523(a)(2)(A).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs Eco Building Products, Inc., Wood Protection Technologies, Inc. (Eco Building Products, Inc. and Wood Protection Technologies, Inc. are, collectively, the "Companies"), and MAK, LLC

1    ("MAK," and collectively with the Companies, "Plaintiffs") pray for a judgment

2    against Defendant Mark Vuozzo as follows:

3            1.      As to the First Claim, for entry of a money judgment in

4                favor of the Companies for damages, including pre- and post-

5                judgment interest and costs, resulting from Vuozzo's Formula

6                Fraud, Contract Fraud, IP Fraud, and Misappropriation Fraud,

7                and a declaration that such judgment is nondischargeable pursuant to

8                11 U.S.C. § 523(a)(2)(A);

9            2.      As to the Second Claim, for entry of a money judgment in

10              favor of the Companies for damages, including pre- and post-

11              judgment interest and costs, resulting from Vuozzo's Formula

12              Fraud, Contract Fraud, IP Fraud, and Misappropriation Fraud,

13              and a declaration that such judgment is nondischargeable

14              pursuant to 11 U.S.C. § 523(a)(4);

15            3.      As to the Third Claim, for entry of a money judgment in

16              favor of the Companies for damages, including pre- and post-

17              judgment interest and costs, resulting from Vuozzo's Formula

18              Fraud, Contract Fraud, IP Fraud, and Misappropriation Fraud,

19              and a declaration that such judgment is nondischargeable

20              pursuant to 11 U.S.C. § 523(a)(6);

21            4.      As to the Fourth Claim, for entry of a money judgment in

22              favor of MAK for damages, including pre- and post-judgment

23              interest and costs, resulting from Vuozzo's Loan Fraud, and a

24              declaration that such judgment is nondischargeable pursuant to

25              11 U.S.C. § 523(a)(2)(A); and,

26    / / /

27    / / /

28    / / /

COMPLAINT

5.    For any and all other relief the Court deems just and proper.

Dated May 14, 2018

Respectfully submitted,

By: */s/ Andrew A. Wood*
Randolf W. Katz (SBN 86214)
Andrew A. Wood (SBN 279403)
BAKER & HOSTETLER LLP
600 Anton Boulevard, Suite 900
Costa Mesa, CA 92626-7221
Telephone: 714.966.8805
Facsimile: 714.996.3514
Email: rwkatz@bakerlaw.com
        awood@bakerlaw.com

Peter R. Ginsberg
(*pro hac vice*)
PETER R. GINSBERG LAW LLC
80 Pine Street, 33rd Floor
New York, New York 10005
Tel.: (646) 374-0030
Fax: (646) 355-0202
E-mail: pginsberg@prglaw.com

*Counsel for Plaintiffs*

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT